[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
This is an action to dissolve a ten year marriage. The parties separated in early 2001 and the dissolution complaint was filed in October of 2001. The wife and plaintiff, Carol P. Liebman, is partially employed at present. The husband and defendant, Larry Liebman is fully employed from a combination of self employment and employment. Both parties have appeared by counsel. Trial of all disputed issues was held on September 24, 2002
The court, after hearing the evidence and reviewing the exhibits, makes the following findings.
The plaintiff, whose maiden name was Carol P. Chappell and the defendant Larry Liebman were married on February 12, 1992 in Orlando, Florida.
The plaintiff has resided continuously in Wauregan, Connecticut for at least one year preceding the date of the filing of the complaint for dissolution of the marriage and other relief.
There have been no children issue of the marriage nor born to the wife during the term of the marriage.
The court finds that the marriage of the parties has irretrievably broken down.
The parties have been unable to reach agreements with regard to alimony, property distribution, responsibility for the payment of certain liabilities and medical and dental insurance. The court will briefly summarize the salient facts found from the testimony of the parties and a review of the exhibits admitted into evidence.
Prior to their marriage in 1992 the husband and the wife had known each other for ten years. They lived together for approximately one year CT Page 13887 before their marriage. At the time of the marriage the health of both parties was good and each party was employed. The marriage was the third for the wife.
After living for a short time in Norwich Connecticut the parties moved to Orlando, Florida. The Husband owned several rooming houses in Orlando. They remained in Florida until approximately 1996 when the couple relocated back to Connecticut to be near the grandchild of the wife. Even though they resided in Connecticut after 1996 the husband and the wife spent a substantial amount of time in Florida managing the husband's rental properties as well as a property he was managing for his parents.
The Husband and the Wife have been gainfully employed during the term of the marriage. The wife, a high school graduate, was employed by a nursing home earning approximately $15.00 per hour at the time of her marriage. When that employment terminated the couple moved to Florida where the wife collected unemployment. After a while the wife started to assist the husband in the management of the rental properties that were owned or managed by the husband. She thereafter was employed at one of the Disney resorts in the Orlando area. When the couple moved back to Connecticut in 1996 the wife worked at several jobs including the Mohegan Sun Casino, independently as a house cleaner and for the Backus Hospital. While working at the Backus Hospital the wife injured her back. The injury required surgery and the wife has permanent physical limitations. She was retrained to be a hairdresser through the Workers Compensation Commission. She currently is partially self employed as a hairdresser and she also is employed by a salon as a hairdresser on a part time basis. The wife testified that she liked to work and the husband testified that the wife has a "good work ethic." The wife is currently underemployed.
The Husband, a high school graduate, has had a number of employment careers. Prior to the marriage the husband was employed by Kaman Aerospace. He left that employment in 1989 to concentrate on managing the rental properties that he owned. He also at various times utilized his training as a machinist to do piece work. While the wife claimed that the husband also generated income preparing tax returns, the husband denies that claim and there is no reported income on the couples tax returns indicating an tax preparation business. While the wife was assisting the husband in managing the Florida properties the husband did take several different jobs. In addition to managing and maintaining the rental properties the husband is currently employed by CC Security, where he earns approximately $9.00 per hour. CT Page 13888
At the commencement of the marriage both parties were in relatively good health. The wife, as previously mentioned, suffered an injury on the job to her back. She has a permanent injury to her back and she takes medication for the condition. She claims that the back has "gone out" on her two or three times since her initial injury. The husband fractured his patella several years ago. The knee currently swells up on his when he works an 8 hour day. Neither of these physical conditions are such as to preclude the parties from remaining active in the work force.
The financial affidavits filed by the parties show the parties current financial circumstances. The Husband declares weekly net income from employment in the amount of $310.00 and income from his rental properties of $182.00 for a total weekly net income of $492.00. The wife shows a weekly net earned income of $94.00 and rental income of $145.00 for a total of $239.00. Wife claims weekly expenses of $559.00, excluding payments on credit card debt totaling $55,342.00. The husband's weekly expenses, excluding alimony and including payments on liabilities, is $549.00. The husband claims debts, excluding mortgages, of $20,200.00. Only $8,000.00 of the husband's debt is owed to non family members. The parties joint expenses exceed their joint income by approximately $377.00 per week.
At the commencement of the marriage the parties were individually different financial circumstances. The wife was twenty thousand dollars in debt, including a debt to the IRS. The husband owned two homes in Connecticut and three rental properties in Florida. The husband was without debt other than real estate mortgages at the time of the marriage. His net worth, based upon his real estate holdings, was close to $170,000.00. Shortly after the marriage the husband paid off the wife's debts from his premarital assets.
During the term of the marriage the equity in the husband's real property increased by $108,000. The condominium in Norwich which the couple purchased jointly in 1991 has a current equity of approximately $10,000.00.
It is apparent to the court that the parties have substantially different cash management styles. The wife uses credit cards to excess. In addition to the debt that the husband paid off at the beginning of the marriage the parties testimony was clear that the husband paid out an additional twenty five thousand dollars during the course of the marriage for debts that were incurred primarily by the wife. In 1998 the money management issues came to a head. At that time the husband took his wife's name off their bank accounts. The Husband testified that in 2001 he had substantially cleared up all their credit card debt. Between that CT Page 13889 time and the date of the hearing in September of 2002 the wife had incurred $55,000.00 of debt. In addition to this debt the wife has incurred a $17,000.00 debt on her 1999 Nissan. The Husband drives a 1990 Ford Truck.
The court has reviewed the evidence in this case in Light of all the pertinent criteria outlined in chapter 81 5j of the Connecticut General Statutes. The court finds that the following orders are fair and equitable:
1. The marriage of the parties is dissolved on the ground of an irretrievable breakdown;
2. The husband shall pay to the wife $150.00 per week as periodic alimony for a period of two years. Said alimony shall be non-modifiable as to amount and except that the husband shall have the right to seek modification of said alimony in the case of his subsequent disability or catastrophic illness affecting his earnings ability. Said alimony shall be non-modifiable as to duration except that said alimony shall terminate upon the following: cohabitation or remarriage by the wife or the death of either party. No alimony is awarded to the husband.
3. The husband shall maintain in full force and effect, at his expense, a life insurance policy on his life in the amount of Twenty Thousand ($20,000.00) dollars with the wife as the primary beneficiary until the earlier of the following: the termination of said alimony as a result of cohabitation or remarriage or the death of the wife. The husband shall provide evidence of insurance on a yearly basis.
4. The husband shall quit-claim to the wife all of his right, title and interest in and to the premises located at 29 Basley Road, Wauregan Connecticut, within ten (10) days of the judgment. The defendant shall waive any and all claims to the equity therein. The plaintiff shall be responsible for and pay all expenses, including but not limited to mortgages, taxes and insurances connected to said premises, and indemnify and hold the defendant harmless from the same. She shall make good faith efforts to refinance the mortgage so as to remove the husband's name from the mortgage.
The wife shall quit-claim to the husband all of her right, title and interest in and to the condominium premises located at 154 Sheraton Road, Norwich, Connecticut, within ten (10) days of the judgment. The plaintiff shall waive any and all claims to the equity therein. The defendant shall be responsible for and pay all expenses, including but not limited to mortgages, taxes and insurances connected to said CT Page 13890 premises, and indemnify and hold the plaintiff harmless from the same. He shall make good faith efforts to refinance the mortgage so as to remove the wife's name from the mortgage.
The husband shall waive and relinquish any and all of his right, title and interest or claims in and to the premises located at 483 Westcott Road, Danielson, Connecticut.
The wife shall waive and relinquish any and all of her right title, interest or claims in and to premises owned by the defendant at the following locations:
6335 Luzon Drive, Orlando Florida;
551 Amidon Lane, Orlando, Florida;
7622 Boice Street, Orlando, Florida; and
114 Squaw Rock Road, Moosup, Connecticut.
5. The husband shall assume responsibility for payment of the jointly held First Union Credit Card in an amount not to exceed $11,482.00. The wife shall turn over to the defendant all credit card she holds for that account and shall immediately cease to utilize said account. The defendant shall indemnify and hold the plaintiff harmless from the same. In the event the balance on the First Union account is in excess of $11,482.00 ("excess balance") then the defendant may deduct the "excess balance" from alimony payments made to the plaintiff at the rate such that said "excess balance" is paid within fifty two weeks. The "excess balance" shall be still be treated as an alimony payment.
6. Except as specifically referenced above, each party shall be responsible for the debts as shown on their respective financial affidavits, and hold the other party harmless and indemnify them thereon.
7. The husband shall retain his interest in the 401k retirement plans/IRAs and the bank accounts listed on his financial affidavit. The wife shall waive all claims and interests therein. The plaintiff shall retain her interest in all bank accounts listed on her financial affidavit and the defendant shall waive all claims and interest therein. The defendant shall waive any right or interest in the workers compensation claim of the plaintiff.
8. The parties shall retain the personal property currently in their CT Page 13891 possession. Each shall retain the automobiles now in their possession and they shall be solely responsible for the payment of taxes, insurance and indebtedness thereon. The wife shall waive all claims and interests to the 1989 Buick Regal motor vehicle and the husband shall have said vehicle. The husband shall waive any rights or claims he has with regard to the wife's workers compensation claim.
9. Given the distribution of the parties assets and liabilities the court will award the wife and allowance to prosecute in the amount of $750.00, which allowance shall be payable to the attorney for the plaintiff in ninety days.
10. The plaintiff shall prepare and file a judgment file within thirty days.
 ___________________ J. Cosgrove, J.
CT Page 13892